

# UNITED STATES DISTRICT COURT

for the

### Eastern District of Tennessee

#### Northeastern Division

FILED

APR 0 6 2023

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

Cody Lee Fillers

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:23-CV-34 KAC(RW
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ✔ Yes ☐ No

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

–v–

Greeneville Police Department; Greene County Sheriff's
Department; 3rd Judicial District Attorney's Office; Lieutenant
Tennessee Bureau of Investigation; 3rd Judicial District
Drug Task Force; et al  GCSD

G.P.D
Off Ethon Metcalf
Off Matthew Stanley          *Defendant(s)*
Off Shawn *(Write the full name of each defendant who is being sued. If the*
H.AKIS *names of all the defendants cannot fit in the space above, please*
Captain *write "see attached" in the space and attach an additional page*
Steve *with the full list of names. Do not include addresses here.)*
Spano

Tani
Lieutenant Netclift
Deputy Nathan Morgan
Deputy David Love
Correction
Officer
Brittany
Willett

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

#### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Cody Lee Fillers |
| Address | 220 Hummingbird Lane |
| | Greeneville                                    TN               37743 |
| | *City*                            *State*              *Zip Code* |
| County | Greene |
| Telephone Number | 423-329-2326 |
| E-Mail Address | clfillers95@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Greeneville Police Department |
| Job or Title *(if known)* | Law Enforcement Entity |
| Address | 200 N College St |
| | Greeneville                                    TN               37745 |
| | *City*                            *State*              *Zip Code* |
| County | Greene |
| Telephone Number | 423-639-7111 |
| E-Mail Address *(if known)* | |

☐ Individual capacity       ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Greene County Sheriff's Department |
| Job or Title *(if known)* | Law Enforcement Entity |
| Address | 116 East Depot St |
| | Greeneville                                    TN               37743 |
| | *City*                            *State*              *Zip Code* |
| County | Greene |
| Telephone Number | 423-798-1800 |
| E-Mail Address *(if known)* | |

☐ Individual capacity       ☑ Official capacity

**Defendant No. 3**

| | |
|---|---|
| Name | 3rd Judicial District Attorney's Office |
| Job or Title *(if known)* | |
| Address | 124 Austin Street Suite #3 |
| | Greeneville      TN      37743 |
| | *City*      *State*      *Zip Code* |
| County | Greene County |
| Telephone Number | 423-787-1450 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

**Defendant No. 4**

| | |
|---|---|
| Name | Tennessee Bureau of Investigation |
| Job or Title *(if known)* | |
| Address | 901 R.S. Gass Blvd |
| | Nashville      TN      37216 |
| | *City*      *State*      *Zip Code* |
| County | Davidson |
| Telephone Number | 615-744-4000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

     ☐ Federal officials (a *Bivens* claim)

     ☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials? See Additional Pages.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

All five named Greeneville Police Department officers actively partook in the physical assault which took place following my Second and fourth amendment, constitutional rights being violated initiated the encounter by holding me at gunpoint with a falsely claimed violation of the noise ordinance given as their original reason for jumping out with five officers, all wielding their service pistols, aimed at my head and chest! See attached pages.

## III.  Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  Where did the events giving rise to your claim(s) occur?
Greeneville/Greene County Corrections and Sheriff's Department Parking Lot.

B.  What date and approximate time did the events giving rise to your claim(s) occur?
December 26, 2019, at 18:20.

C.  What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
I was swarmed and held at gunpoint by the officers claiming I violated the noise ordinance. Not only was this unreasonably based on a noise ordinance violation, but it was also invalid because the ordinance does not go into effect until 11 pm, and it was only 6:20 pm. They pulled me out of my vehicle after I stated that the ordinance was not in effect & asked for the real reason for their presence. They proceeded to use excessive force for no reason and threw me down on the ground, then began illegally searching my vehicle when they had no valid reason to be there. There are a total of approximately ten employees who partook in my arrest between those of the Greeneville Police Department and Greene County Sheriff's Department. All five Greeneville Police Department officers' body cams, their vehicles' dash cams, and the surveillance footage from the Greene County Sheriff's Department's parking lot all act as evidence of my version of events.

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I currently have five herniated disks in my back, but before the night of my arrest, I only had three herniated disks. I did not receive further medical treatment for this due to my inability to afford the surgery to repair this. I have also sustained long-term mental issues, for which I have currently undergone three months of mental health treatment, but with no insurance, I have not gotten adequate treatment.

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

I am seeking an injunction, explained later, as well as $2.5 million in financial compensation for all I have experienced since the night of my arrest. I am providing additional information regarding the basis for these claims on the attached pages.

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     04-07-2023

Signature of Plaintiff     *Cody Fillers*

Printed Name of Plaintiff     Cody Lee Fillers

### B.     For Attorneys

Date of signing:     _____

Signature of Attorney     _____

Printed Name of Attorney     _____

Bar Number     _____

Name of Law Firm     _____

Address     _____

_____
City     State     Zip Code

Telephone Number     _____

E-mail Address     _____

1. This is a Civil Rights (42 U.S.C 1983) and a Tennessee State Tort action arising out of the unlawful search and seizure of Plaintiff Cody Fillers and his physical property in connection with Greeneville Police Department & Greene County Sheriff's Department officers/deputies, collectively, "Defendants" in Greene County, Tennessee. Circuit Court Judge Alex Pearson determined that this appeared to be an unlawful arrest, which completely lacked any proof of Probable Cause! The arrest took place on the 26th day of December of 2019 but was not disposed of until my motion hearing on the 8th day of April of 2022, with Judge Pearson granting both a "Ferguson Motion" and a "Motion to Suppress" & thereby, the case was dismissed with prejudice. Under the same (42 U.S.C 1983) Federal Civil Rights cause of action, I'm asking this court to consider the matter for violation of my constitutional rights by way of my Second, Fourth, & Fifth Amendment rights. These rights were violated by the following acts carried out by The Greene County Sheriffs Department, Greeneville Police Department, 3rd Judicial District Attorneys Office, and the 3rd Judicial Drug Task Force. The list of violations include the following: "Malicious Prosecution","False Arrest", "Excessive Force" "Evidence Tampering" "Official Misconduct" and lastly, the violation of my "Due Process" has on behalf of the state and r = malicious prosecution" efforts against me which was carried out by defendants collectively.

2. To begin this list, I'd like to lay out the details of my case for the second amendment violation, which was a coordinated effort on behalf of Greeneville Police Department Officers Ethan Metcalf, Matthew Stanley, Cody Greene, Shawn Hinkle, & Courtney Mikels. (Current Acting Chief of Police) was the acting Captain on duty at the time who responded to the "use of force review. A good portion of the conversations which took

place between Captain Spano and a few of those officers on scene that evening which I've got partial footage of numerous valuable pieces of information included on that partial footage from Ethan Metcalf's body cam, as well as the statement by Corrections Officer Brittany Willet, which acknowledges that she "saw what she believed could have been a gun" which was what caused her to go back inside of the Greene County Sheriffs Department (herein after G.C.S.D or Defendant) to tell her superior, which was Lieutenant Toni Metcalf, who then went and called in the Greeneville Police Department, who ultimately swarmed me at gunpoint, for what they claimed was a noise ordinance violation, but turned out to be solely regarding their "concerns" regarding my possession of a pistol, as I sat peacefully inside my truck, and no magazine was even loaded into the gun, I'd like to point out. The names of the two GCSD employees who initially walked by my truck, saw my pistol sitting in the seat beside of me, then decided that was adequate reason to go back inside and tell a superior, (which a report amongst my file of evidence pertaining to this case suggests that superior was night shift Lieutenant Toni Metcalf who then made the call to the GPD based on the knowledge that I was parked in the lot with a firearm in my vehicle… Last time I checked, my vehicle is a direct extension of my person, essentially. Meaning, they would need either a search warrant, or to possess solid proof of me having recently committed,, or preparing to commit a criminal act in order to have been justified in temporarily detaining me in that scenario, never mind arresting me and treating me the way I was treated upon being approached by GPD officers as I was sitting inside my truck out in the parking lot of the Sheriffs Department. Those two unknown Deputies then proceeded to go back inside to inform corrections officer Britney Willet of that fact. Shortly after, Ms Willet proceeded to walk

outside, and ultimately witness me step out of my truck as I was attempting to secure the tools which were laying in the bed of my truck, exposed to potential theft if I left them there, so I put those inside my truck, and sat down to finish my cigarette before I'd planned on going inside the Sheriffs Department to retrieve my theft report. It was during this time that Corrections Officer Willet claimed to see what she "believed to be a firearm on my hip" which led her to walk back inside and inform her superior, GCSD Lieutenant Toni Metcalf, who then alerted G.P.D and requested their presence. It is this unjustified concern which was acted upon, based on the "potential" possession of a firearm which initiated the request for backup, and ultimately led to me being swarmed at gunpoint, by the 5 G.P.D officers named above.

3. That leads me to the next violation in this complaint, the fourth amendment violation which was carried out by the G.P.D officers named above. Upon swarming me as I sat in the parking lot that night, it was Officers Metcalf & Stanley who partook in the primary usage of "excessive force" against me after I questioned the reason for such an overwhelming response, including 5 officers holding me at gunpoint and demanding me out of my truck. In response, I simply asked them to explain to me what law/ordinance which I was believed to be in violation of that would justify this response. Naturally, I was left slightly confused by the response which I received from Officer Stanley, who was the one shouting verbal commands at me, demanding me out of my truck, with all five officers having their guns drawn on me by this point. Officer Stanley then responded by claiming that I was in violation of the city's noise ordinance, and again demanded me out of the truck. I had noticed officers reaching for their weapons immediately upon exiting their vehicles, & demanding me out of the truck, which is why a simple "noise

ordinance violation" didn't seem to provide appropriate justification for holding a man at gunpoint and demanding me to exit my vehicle with my hands in the air. My response was simply to ask Officer Stanley how a noise ordinance violation, which wouldn't even take effect for another four and a half hours, could possibly justify holding me at gunpoint from the moment they exited their patrol vehicles. Only then did Officer Stanley admit to the fact that they'd received a call from a witness who believed they'd saw me in possession of a firearm as I sat inside of my truck in the parking lot. I was sitting there preparing to walk inside to retrieve the theft report which I'd dropped off at the Sheriff's Department five days earlier, for the tools which had been stolen from me in the weeks/month leading up to this incident. Officers Metcalf and Stanley were the two who ultimately carried out the primary usage of "excessive force" when one of them planted his forearm into my chest while the other proceeded to simultaneously kick my feet out from under me, landing me on my lower back. The level of utter disregard for my safety with which these officers ultimately approached the situation, in order to have held me at gunpoint from the very beginning of the encounter has truly opened my eyes to the fact that not all Law Enforcement Officers do their job with equal integrity, nor do they all fit the description of being one of the "good guys with guns" as most people would mistakenly believe to be the case. With the presence of these officers directly resulting from their receipt of the claim stating that I was in possession of a firearm, sitting out in the parking lot, I decided it was in my best interest to simply remain calm, while offering them the opportunity to retrieve the pistol from my passenger seat in order to take it back to their cruisers, allowing them to run the numbers. I offered this option for two primary reasons; first was for the sake of verifying that I was, in fact, the rightful owner of the

gun, and that it was legally in my possession. The second reason was so that I had a way to confirm that I attempted to comply by suggesting they retrieve the pistol from my passenger seat, & confirm my rightful ownership, thus leaving room for extreme skepticism, at the very least. I knew that I would ultimately need more than just my own personal opinion once it came time for a jury to determine whether they believe that my possession of the gun was truly the main concern, or whether it even appeared to be the biggest motivating factors for the overwhelming police presence which I was subjected to that evening. Once officers denied that opportunity, I knew right away that the gun was merely being used as an easy-out for why they'd shown up in full force, which was the same exact purpose behind the reason they they'd tried using the noise ordinance excuse which I was given originally. Both excuses were nothing more than am attempt to give the false impression that they had identified a valid reason which would warrant them gaining access to search my person, as well as my truck, which would undoubtedly be necessary in order to persuade a jury that they were simply responding to a call, and not partaking in any funny business, such as failing to uphold the sworn oath which they all must take prior to becoming a sworn member of Law Enforcement.!

4. In the span of more than three years which have passed since my arrest, the Drug Task Force & the District Attorney's office have continued colluding in the ongoing violations of my fifth amendment right to "due process" as well as the "intentional infliction of emotional distress" largely through the aforementioned violation of my due process.. It's gotten more and more obvious as time goes on, with me still unable to get a job working within the field in which I have 7 years full-time experience, which is the Home Improvement/Construction industry. Recently I was informed that the reason for this

happens to be the fact that they've continued their "malicious prosecution" efforts even over the past 12 months still, since the case was dismissed with prejudice.,this entire time. This is an ongoing attempt to silence me, by continuing to violate my fifth amendment rights throughout the entirety of my (Malicious) prosecution, as well as the twelve months which have passed since the case was dismissed. The act of arresting me in & of itself was an egregious act of blatant "police misconduct".and seeing that the case was continuously delayed for 4 months at a time, for a total of roughly 6-7 different extensions, in Circuit Court Judge Alex Pearson's court, alone.

5. The next violation I'm listing in my complaint is the act of "evidence tampering" as well as "obstruction of justice" which both go hand in hand. . The acts which brought rise to these violations being included within this complaint include the editing of the official police report, which was originally written up by officer Ethan Metcalf at around 8pm the night of my arrest, and was then edited by Metcalf, approximately four hours later, just after midnight on December 27, 2019. Apparently whatever editing Metcalf did at that time wasn't sufficient, then causing his (then) Night Shift "Patrol Captain" Captain Steve Spano, (whose now the acting Chief of GPD) feel the need to go in behind him approximately 5 1/2 hours later, just before the end of shift around 5:50 AM on December 27, 2019 to make his own edits to that official narrative. Although I can't necessarily prove what those edits were removing from the report, I know for a fact that I specifically made captain Spano photograph both of my wrists, as well as my back, which I had informed them was hurting pretty bad since being forcefully, and unnecessarily kicked off of my feet, onto my hind end, where I'd just explained to them was the reason I wasn't able to move at 100% just before being ripped out of the truck,

presumably for asking them what their reason was for showing up to begin with:by officers, Metcalf and Stanley, during the physical altercation in which they essentially drug me from my truck. Then, after Officers refused to provide me with the verbal confirmation which I requested 3 separate times; asking for permission to remove my left hand from the steering wheel in order to reach down and open my door, without having to be mindful of the very real fear of risking the very real chance of being shot if I were to take it upon myself to make any movements which would, that their guns were aimed at me the entire time, from the very beginning of the encounter, right up until this point, when they had to holster their weapons in order to physically grab ahold of me, and rip me out of my truck, which then escalated once the "excessive force" and "battery" (for purposes of the State Tort side of the suit) exerted by these two officers initially, but by the time I went to the ground and was rolled over on my stomach with my face being buried in the asphalt, Officer Sean Hinkle, then knelt down on my neck on both sides, so that my head and my left arm or trapped between his legs, all while either officer Stanley, or officer Metcalf proceeded to apply more pressure to the armbar which I was put in after having them DeMann, my left arm from me, and even though I continued screaming that the officer on my head clearly had it trapped, disabling me from having any control whatsoever over, giving him that hand in order to cuff me.

6. The Tennessee state Tort violations included in the matter are in quotations, within the complaint above in the "overlapping" charges, and those include: False arrest, battery, malicious prosecution, evidence tampering, obstruction of justice, official misconduct, and emotional distress. events which have brought rise to my claim for each individual violation which I've listed throughout this complaint.which all five of the Greeneville

Police Department officers Ethan Metcalf, Mathew Stanley, Cody Greene, Shawn Hinkle & Courtney Mikels. Also from GPD Captain Steve Spano (acting chief currently). All officers whose names I know who partook in the case were from the Greene County Sheriffs Department, which includes Corrections Officer Brittany Willet who falsely accused me of having my gun on my hip, and she essentially partook in initiating the whole encounter.

7. The violation which brings rise to my fourth amendment violation would be all 5 GPD officers, for making an unjustified show of force such as what I've explained above, then subjecting me to an uncalled for & frankly, illegal search of my pockets and my person as well as they typically do when trying to fill for weapons, or anything you may have hidden, although I had taken the courtesy to inform them as soon as they pulled out and stepped down that I had a gun in my truck, and for that reason, I was leaving my hands on the wheel until getting further confirmation that reaching for the door would not get me shot, and GCSD Deputies Nathan Morgan and David Love, both of whom partook in the "illegal search/seizure"jumped out of their patrol vehicles, all of who were wielding their nine-millimeter service pistols & aiming all five guns at my head/chest, one from each respective direction. Immediately, their intentions became rather obvious. Upon witnessing all five officers exit their vehicles, immediately reaching for their service weapons, I quickly responded by placing both hands on the top of my steering wheel, in plain sight, as my life essentially depended on making all the right moves, while verbally attempting to navigate the situation in a way which I could successfully defend myself & my constitutional right to remain free from any liability, in the case of a fourth amendment violation; illegal search and seizure, all the while doing so in a respectful

manner, especially so for aman who whose staring down the business end of five separate nine- millimeter service pistols which remained aimed at my head/chest for the entire first 90 to 120 seconds of the encounter! Officer Stanley then holstered his weapon, in exchange for pulling my door open and grabbing me by my arm, just above my elbow and forcefully removing me from the truck. This happened even after I'd just asked Officer Stanley to inform me of the possible justification for such an obviously inappropriate escalation of force, by immediately drawing their weapons on me for what Officer Stanley had initially announced as being a noise ordinance violation which I was responsible for committing. In response to which I replied "so you're saying a noise ordinance violation somehow justifies 5 officers holding me at gunpoint, and demanding me out of my truck?!". I then proceeded to inform both Officers Stanley & Metcalf, the two officers who were shouting profanities as they were both enraged from the start, that I'm a home improvement contractor, which is how I happened to be intimately familiar with the noise ordinance that Officer Stanley initially attempted to claim was "justification" as to what could've possibly called for the immediate skipping of any "typical deescalation tactics" in favor of this ridiculous show of force by them instead opting to skip ahead to the most extreme of all escalation tactics, right off the bat by all five Greeneville Police Department Officers!!there's no such ordinance in effect outside of the 11pm-7am window in which said ordinance does exist., With it being only 6:20 pm, I said I was having a hard time believing him on that one, the idea that a noise ordinance violation would call for me to find myself staring down the business end of five pistols is beyond outrageous, and asked what the real reason for their presence may be. It became obvious rather quickly that I had just presented a large obstacle in between

the current state of tensions,, versus where they expected it to escalate up to by this point in the game plan.

8.  It was at this point when  officer Stanley changes the story, now claiming that the complaint was called in by a college student who had informed them of the presence of a suspicious looking guy sitting in his truck with a pistol inside the vehicle, which they claimed to have saw when they walked hy the truck.. I replied simply confirming that I did in fact have my pistol there with me, I offered them the opportunity to run the numbers in order to confirm that it was legally owned, and in my possession lawfully, if that would get them to put the guns away. Of course, by now, they had closed in on me, shrinking the distance between the group of officers who were all converging in on me from all sides, with Officers Metcalf and Stanley being the two main aggressors in the situation, I told Officers Stanley and Metcalf that if they expected their weapons being aimed at me was going to cause me to any kinda quick, sudden movements in order to provide them a justifiable reason for shooting me in the parking lot. I stated that they would have to shoot me down in cold blood, if that was their prerogative to do so,as I wasn't moving without first getting confirmation that they wouldn't shoot me for dropping my hand in order to open the door,  Rsthet than to even acknowledge my statement about the unanswered question which I had repeated multiple times, with the same result. Instead of ever answering that question, Officer Stanley took  it into his own hands, quite literally, to forcefully assist me out of the truck, then slammed me up against the side of the truck while asking if I had any weapons, or anything sharp which may poke or stick him anywhere on me. Once they realized I had nothing on me that would justify them ultimately having a valid reason for arresting me,  played a significant role in

the act of planting me on my rear end, then rolling me over onto my stomach, and ultimately continued to abuse the authority which they're granted by simply being a representative of Law Enforcement, by this point, Officer Shawn Hinkle got in on the physical assault as well by putting one knee down on each side of my neck, leaving me effectively paralyzed as I laid like this for 3-4 minutes, as I was essentially being jumped by these 3 officers while Officers Mikels and Green stood back, providing more moral support than anythingme out of the truck yet again, rather than giving me an answer . I informed them that I would not be moving a muscle without first getting verbal confirmation from Officers Stanley and Metcalf to the question I had asked him immediately after being demanded out of the truck the last time just to confirm they were not going to shoot me for moving my left hand to open my door before I was willing to step out of my once they asked me. I opened the door & began to step out and was met with unnecessary force, which I had anticipated, hence why the body cam footage of eginning of the encounter is not provided, not even when the state was forced to either provide said footage, otherwise our motions would be granted, based on a lack of probable cause as Judge Pearson informed Assistant General David Baker at a hearing back in December, when my original public defender filed both a "Ferguson Motion, & a motion to suppress." Due to the actions which Officers collectively participated in being beyond unprofessional but reaching the level of downright reprehensible and unethical; they made sure to get rid of the physical evidence against them, which would have shown Officers Metcalf & Stanley initiating the usage of force even after I had surrendered. Not only did these officers the situation unnecessarily, but shortly after informing them of three herniated discs in my lower back, they took the show of force a step further, kicking

my feet out from under me, causing me to land on those herniated discs before rolling me over onto y stomach & burying my face into the asphalt while Officer Hinkle was knelt on my neck, with one knee on each side of my head, hidden between my legs. I shouted, telling them I could not give them my left arm when it was buried under the Officer on my head. Only after all this, the foul play had taken place did four of the five officers finally think it was a good idea to turn their body cams on, as they helped me to my feet & walked me to sit against the rear driver's side tire of my truck, which is when the pieces of the footage that were turned over, all begin recording. Fortunately for myself, the details which are crucial to proving my claim for the evidence tampering, obstruction of justice, battery, & Official misconduct aspects can be heard in multkllllllll while Officers are cutting up about taking me to the ground, including Officer Cody Greene confirming to Captain Steve Spano that he was in the first cruiser which arrived on the scene, and also stated that he had his body cam on the entire time he was on the scene. After hearing Former Officer Greene acknowledge the existence of the entire copy of his body, and the cruisers dash cam footage As the old saying goes; there are typically three sides to any story; regarding the series of events that took place hearing Former Officer Greene acknowledges the existence of the entire copy of his body cam footage, and the cruiser's dash cam footage to Captain Spano, however, the only footage which was ever recorded turned over in discovery by the District Attorney's office was partial footage which began at exactly 6:27 and thirty seconds even though according to the reports which I was given by Greeneville Police Department , the , they arrived on scene at eighteen hundred hours and twenty-one minutes which begs the question; what happened to those first seven minutes of body/dash cam footage from the encounter? after Captain

Spano began going around asking officers to explain in detail how the situation had played out. In that part of the recording, out of three officers, not a single one told the full truth about what had happened which escalated the situation to the point of me being forcefully shoved up against my truck after I willingly stepped out with my hands in the air, clearly not attempting to escalate the situation in any way shape or form seeing that I had already kicked the encounter off with five pistols, pointed at my head & chest, that made it rather obvious that they were trigger-happy because I had guns pointed on me from the moment they stepped out of their vehicles. Many of the facts about this complaint and be verified via the illegally edited partial footage, wherein you can confirm that the statements made by officers, as well as several comments that they made while laughing and cutting up amongst themselves about how the encounter had played out, which I can be proven by using their claims in that partial body cam footage which I was given. Immediately after the footage had been altered, according to the file when I open it up to the main page where it shows four (partial) attachments, which include Officer Metcalf's altered footage, Officer Hinkle's altered footage, and Correction Officer Brittany Willet's Official Statement. All in total, I was given three pieces of butchered footage two of which had been edited just a day or two before being turned over to me, and the other piece of footage, as well as the "official report" from then Correction Officer Brittany Willet, had been edited before being turned over to my Public Defender as the first pieces of discovery a couple of months prior. However, the only footage which was turned over in discovery by the District Attorney's office was partial footage that began rolling at eighteen hundred hours and twenty-seven minutes and twenty-three seconds even though according to the reports I was given by Greeneville Police

Department officers, they arrived on scene at eighteen hundred hours and twenty-one minutes which begs the question; what happened to those first six-plus minutes of body/dash cam footage from the encounter? Alternatively, if we are assuming the information to be correct/accurate regarding the information obtained from the report given by Correctional Officer Brittany Willett, (now Deputy Brittany Willett) whose own report states that she encountered me in the parking lot at eighteen and twelve hours, roughly nine minutes before the barricading in of my truck by four Greeneville Police Department patrol vehicles. Alternatively, if we are basing the timing by assuming the information to be correct/accurate regarding the report was given by Brittany Willett, whose own account of the encounter (as is noted in her report) claims that she stepped outside the Sallyport doors as her walkie went off, which, according to her account, as stated in the "Official Report" then caused me to react by instantly jumping out of my truck and allegedly turning directly facing her, at which point she stated she saw "something metal on my hip, thus giving her the impression that I was "most likely in possession of a weapon, potentially a gun" which, nowadays, is perfectly reasonable justification for requesting assistance from the entire night shift crew, consisting of five patrol Officers, all of whom had just began their shift at eighteen hundred hours. Based on their reported version of events, there's simply no plausible way in which all of this could have been coordinated, with all five (five out of five, meaning they sent their entire complement of man-power down to the jail to partake in this façade) officers on-duty sitting in wait, inside of their patrol vehicles, waiting for the command what ultimately backfired on them in terms of the failed attempt to nonchalantly show up and immediately go above and beyond to assure they found an excuse to escalate the

situation, and ultimately achieved their main goal, which was simply to do whatever necessary to assure that I was taken in & booked for any possible reason they could come up with to get away with falsely arresting me that night. All of this was their idea of a reasonable response to a report of me "possibly" having a gun, which was inside my truck, therefore the gun was perfectly legal to have in my possession. I sat there not harming a soul, while under the impression that, as a Natural-Born American Citizen in the comfort of my personal property, aka inside of my truck sting-op for the record)Patrolmen having been at the station, conveniently sitting inside their patrol vehicles, awaiting the command to roll out from whomever was in charge of seeing the operation through, which appears to have been Captain Steve Spano, seeing that he was the "Superior" who was called to the scene immediately after these five Officers were finished making an example of me by taking it upon themselves to become the aggressors once I had called them out for the (clearly fabricated excuse used by Officer Stanley) false claim that I was in violation of the City's Noise Ordinance, which did not take effect for roughly another four hours and thirty-nine minutes after the initial contact was made, at eighteen hundred hours and twenty-one minutes, according to the Greeneville Police Department's own version of events, as can be found in the "official Narrative" which was written up by Officer Metcalf, who had no reason for being labeled as the "Arresting Officer" immoral, absolutely unnecessary escalation to sign off on the "use of force review" immediately following what was obviously a unethical display of excessive force from the Greeneville Police Department set in motion by the phone call placed by Lieutenant arrival, (approximately eighteen hundred hours and twenty-one minutes when they "engaged the suspect in the parking lot minutes prior to the reported

time which they pulled in and immediately barricaded my truck in place) who had clearly pre- every bit of what was in blatant attempt to use their authority and sheer force then before jumping out of the based on their own self-reported, as clarified in Officer Metcalf's personal account of the ) on-duty to my truck, in response to "the possibility that Corrections Officer Willett may have guessed correctly regarding the metal object she witnessed on my hip when I stepped out of the truck" consists of five patrolmen All of this, again, was based solely on what she admitted was merely a split-second observation of what she was inclined to believe could have potentially been a firearm. This assumption was based solely on the unjustifiably brief period when I did step out of my truck, to make sure that my toolbox/job box which was fastened in place, with only a single two by four board bolted into the frame of my truck bed, acting as a spacer between the back of my toolbox with the front of my truck bed noticing that I had been something shiny on my hip what "she believed could have potentially been a firearm" based on the location of the object having been attached to my hip insisting that the sound of her walkie-encountered me in the parking lot as I "jumped out of my truck, appearing to be acting outside of the sallyport at the Detention Center in the parking lot at eighteen hundred hours and twelve minutes, which implies that the situation was such a serious concern that, according to her own roughly nine minutes before the barricading in of my truck by four Greeneville Police Department patrol vehicles; the two cruisers which pulled in behind my truck to run my license plate only moments before the arrival of the two SUVs. which, according to their own reports, was stated to have been initiated at eighteen and twenty-one hours, according to we are taking the official narrative produced by Officer Metcalf at face value only after twenty-four to twenty-six months later, the

partial footage was finally given to me as discovery in a time period ranging from December 2021 to February 2022, which ended up being roughly three to five months prior to the case being dismissed with prejudice by Judge Alex Pearson before the state found it necessary to turn over the doctored portions of footage which they decided to release, in hopes that I would see something other than the chilling reminder of how unethically I was treated by these five Greeneville Police Department officers, and the Captain who signed off on a falsified report regarding the "necessary force" which they claimed to have used against me, when in reality, they asked for my identification, and I asked permission to retrieve it from the wallet in my back pocket, immediately landing me on my lower back, in a matter of no more than forty-five seconds after I had explained to them that I had three herniated discs in my lower back, & did not want any unnecessary problems, just to know what law/ordinance I was suspected to be in violation of which justified having five service pistols aimed at my head/chest as if I posed some kind of imminent threat towards the public's safety, when in reality, the Greene County Sheriff's Department was fully aware of my presence, seeing that I was requested to call in & notify them prior to coming back to retrieve a theft report for sending to my insurer to recover what was quite a significant loss in tools which were stolen from me. What their justification for the way they set me up for the events to follow once I showed up is beyond me, but it's also clearly just the beginning of this entirely unlawful/illegal process of "persecution by the prosecution" all-out war which has been waged against me now, as I have been unable to get a job in my profession by trade, which I've got more than six and a half years full-time experience, due to the more than two years now which the Tennessee Bureau of Investigation has now also been involved in my case, with a heavy

interest in prosecuting me as some kind of fraud, when I have never "defrauded" a customer in my life. Prior to my encounter on this horrific evening, including my name/face appearing as the headline of the local Newspaper, as well as My name & mugshot being shared on WJHL less than four hours after my booking, and it begins to paint a clear picture of just how committed these officers have proven themselves to be in regards to destroying my name/business, & in doing so, ultimately, they have destroyed my livelihood for more than two and a half years now, as I have been unable to even get a job for any local construction companies, even after I have put in more than a dozen applications at our local construction companies, even going back months after being denied, to check back in periodically as well, to help build my case regarding the fact that they have essentially put a complete stranglehold on any source of me providing a living for myself, due to their knowledge of my intent on holding them accountable for the immoral/unethical actions of those involved in my false arrest/malicious prosecution over the previous three calendar years.